FAX or Internet

# UNITED STATES DISTRICT COURT
## for the
## District of Arizona

In the Matter of the Search of )
**Hotel Room # 156 at the Monument Valley Inn,** )
**located at US-160 & US-163, Kayenta, AZ 86033** )   Case No. 23-4047 MB
)
)

## ELECTRONICALLY ISSUED SEARCH AND SEIZURE WARRANT

To:     Any authorized law enforcement officer.

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the _____ District of Arizona.
*(identify the person or describe the property to be searched and give its location)*: **See Attachment A.**

The person or property to be searched, described above, is believed to conceal *(identify the person or describe the property to be seized)*: **See Attachment B.**

I find that the affidavit(s), or any recorded testimony, have been communicated by reliable electronic means and establish probable cause to search and seize the person or property.

**YOU ARE COMMANDED** to execute this warrant on or before   ~~March 8, 2023~~ March 22, 2023
                                                                                                                *(not to exceed 14 days)*

[X] in the daytime  6:00 a.m. to 10 p.m.     [ ] at any time in the day or night as I find reasonable cause has been established.

Unless delayed notice is authorized below, you must give a copy of the search warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave a search warrant copy and receipt at the place where the property was taken

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to:
  **Any Magistrate Judge on criminal duty in the District of Arizona**       .
                          *(Name)*

[ ] I find that immediate notification may have an adverse result as specified in 18 U.S.C. §3103a  (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*   [ ] for _____ days *(not to exceed 30).*
                                                            [ ] until, the facts justifying, the later specific date of _____.

Date and Time Issued: _____           *Camille D Bibles*  Digitally signed by Camille D Bibles
                                                                                                Date: 2023.03.08 20:47:24 -07'00'
                                                                                *Judge's Signature*

City and State:    Flagstaff, Arizona                    Honorable Camille D. Bibles, United States Magistrate Judge

| **Return** | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |
| Inventory made in the presence of : | | |
| Inventory of the property taken and name of any person(s) seized: | | |

| **Certification** |
|---|
| I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.<br><br>Date: _____<br><br>_____<br>*Executing Officer's Signature*<br><br>_____<br>*Printed Name and Title* |

AO 106 Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
District of Arizona

| In the Matter of the Search of:<br>**Hotel Room # 156 at the Monument Valley Inn, located at US-160 & US-163, Kayenta, AZ 86033** | Case No. 23-4047 MB |
|---|---|

### ELECTRONICALLY SUBMITTED APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property:

**As further described in Attachment A**

located in the District of Arizona, there is now concealed:

**As set forth in Attachment B.**

The basis for the search under Fed. R. Crim. P. 41(c) is:

☒ evidence of a crime;
☒ contraband, fruits of crime, or other items illegally possessed;
☒ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code/Section | Offense Description |
|---|---|
| 18 U.S.C. § 1111 | Murder |
| 18 U.S.C. § 113(a)(3) | Assault with a Dangerous Weapon |
| 18 U.S.C. §113(a)(6) | Assault Resulting in Serious Bodily Injury |

The application is based on these facts:

**See attached Affidavit of Special Agent Jesse Vargas**

☒ Continued on the attached sheet.
☐ Delayed notice of _30_ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Reviewed by AUSA Jason Crowley

JESSE VARGAS  *Digitally signed by JESSE VARGAS Date: 2023.03.08 20:19:04 -07'00'*
*Applicant's Signature*

Jesse Vargas, Special Agent, FBI
*Printed name and title*

_X_ Telephonically Sworn

Camille D Bibles  *Digitally signed by Camille D Bibles Date: 2023.03.08 20:46:35 -07'00'*

Date: _____
*Judge's signature*

City and state: <u>Flagstaff, Arizona</u>    <u>Honorable Camille D. Bibles, U.S. Magistrate Judge</u>

# ATTACHMENT A – PLACE/THING TO BE SEARCHED

This warrant is to search a hotel suite at the Monument Valley Inn being used as a long-term residence. The Inn is located at US-160 & US-163, room #156. The hotel room is located within the Judicial District of Kayenta on the Navajo Nation Indian Reservation and it is particularly described as:

A one-bedroom suite located on the first floor of the two-story Inn, listed as room #156. The suite has a red/orange entrance door that is facing northeast. The suite contains a common area with two separate beds, a bathroom, and an extra room with its own entrance.





## ATTACHMENT B – THINGS TO BE SEARCHED FOR AND SEIZED

1. Any blood evidence, and related DNA evidence, including dried blood or substances that appear to be blood, which may be on the floors, walls, clothing, bedding, furniture, weapons, or items used to clean up the same (such as cloth towels, washcloths, or paper towels).

2. Any knives or sharp-edged weapons which appear to have any blood, tissue (e.g., skin), or hair on them, and/or which are in near proximity to any blood or substances that appear to be blood.

3. Indicia of ownership, occupancy, and/or use of the residence, including such things as: mail (e.g., bills) that may be addressed to the occupant(s); driver's licenses and/or identification cards; personal property such as clothing that may identify the owners and/or occupants of the structure; and photographs of the owners and/or occupants at the structure.

4. Photographs of the residence and the things seized.

UNITED STATES DISTRICT COURT
DISTRICT OF ARIZONA

## ELECTRONICALLY-SUBMITTED AFFIDAVIT

I, FBI Special Agent JESSE VARGAS, state under oath as follows:

1.  I am a Special Agent with the FBI, currently assigned to the Phoenix Division, Flagstaff Resident Agency, in Flagstaff, Arizona. I have been employed since December 2020. I received training at the Federal Bureau of Investigation Training Academy, and have experience including, but not limited to, investigating major crimes that occur on Indian reservations, and specifically the Navajo Nation Indian Reservation, Indian Country, within the District of Arizona (AZ).

2.  This affidavit is based on the investigation, observations, and/or experience of your affiant, as well as the investigations, observations, and/or experiences of other law enforcement officers and/or witnesses including those described in this affidavit. More specifically, the information contained in this affidavit was relayed to me by Special Agent (SA) John Garcia and SA Patrick Burke. Because this affidavit is being made to establish probable cause for a search warrant, your affiant has not listed every fact known regarding this investigation.

## Introduction

3.  This affidavit is made in support of an application for a search warrant in furtherance of an investigation by the FBI and Navajo Nation Criminal Investigators into a murder of a Navajo Indian on the Navajo Reservation (Indian

1

Country) in the District of Arizona. The purpose of the proposed search warrant is to search the hotel suite of Dustin White (WHITE). The hotel is within the confines of the Navajo Nation Indian Reservation in the District of Arizona. The hotel is particularly described in **Attachment A**, and the evidence being sought is particularly described in **Attachment B.** The evidence sought is in support of an investigation pertaining to assault and murder pursuant to (among other statutes) 18 U.S.C. §§ 1111, 1153, 113(a)(3), and 113(a)(6).

4. Based on your affiant's training and experience, it is known that the Navajo Indian Tribe is a federally recognized Indian Tribe. Based on the investigation, the suspect in this case, WHITE, is believed to be an Indian. The victim, D.Z., is also believed to be an Indian.

## Investigation

5. On March 5, 2023, at approximately 11:45 p.m., Navajo Police Department (NPD) received a call from a female identified as Carolyn Charley. Charley stated her son, D.Z., had been stabbed and died. Charley received the information from Patrick Smith and Vania Ignacio. NPD Officer Rogers was assigned to investigate and was unable to locate a potential crime scene.

6. Charley called the NPD back at approximately 2:42 a.m. Charley told NPD she had been trying to call D.Z. but was unable to make contact with him. Charley also told NPD that Smith and Ignacio came by her house to tell her that D.Z. was killed by WHITE.

7. NPD Officer Chad Tachine interviewed Smith. Smith told Officer Tachine that he was in his shed and Ignacio was crying because D.Z. was gone. Ignacio told Smith that WHITE came over to her house covered in blood, asking if he could clean himself off. WHITE told Ignacio that D.Z. was "gone." WHITE told Ignacio that WHITE was injured but could not go to the emergency room. WHITE threatened Ignacio not to tell anyone.

8. Officer Tachine spoke with Charley at the NPD at approximately 5:29 a.m. on March 6, 2023. Officer Tachine explained the steps they had taken and advised Charley that D.Z. would be entered into the National Crime Information Center (NCIC) as a missing person. Charley told Officer Tachine she had received a call from her daughter, Kendra Zonnie, at approximately 8:00 p.m., on March 5, 2023. Kendra stated D.Z. was hurt and had been stabbed by Emerson Yazzie. Charley spoke with Emerson's mother, who stated D.Z. and Emerson had been hanging out all night at NHA #1, Chilchinbeto, Arizona 86033. Charley had also heard that D.Z. may have been shot.

9. D.Z. was entered into NCIC at approximately 9:42 a.m., on March 6, 2023. Navajo Criminal Investigators contacted the cellular service provider for D.Z.'s cellular phone. The service provider indicated that D.Z.'s phone had call activity at around 8:23pm and 8:29pm on Sunday, March 5, 2023. However, after that the phone appeared to be turned off and remained off when investigators checked with the provider again later in the day on March 6, 2023.

10. Officer Rogers spoke with Ignacio at approximately 11:42 a.m., on March 6, 2023. Ignacio told Officer Rogers that she was scared to speak with law enforcement, but she would feel more comfortable speaking with a Navajo Criminal Investigator. Ignacio stated WHITE came by her house with her niece, Chasity White. WHITE's arm was taped up, and he stated he got in a fight with D.Z.

11. On March 8, 2023, SA Garcia and SA Patrick Burke interviewed WHITE at the Kayenta DOC. WHITE was arrested by NPD on the evening of March 7, 2023, on separate, unrelated tribal charges. WHITE was read his Miranda rights verbatim via FBI FD-395 and WHITE agreed to speak with Agents. WHITE at first denied knowing who D.Z. was, but later said he did in fact know D.Z. WHITE stated he had never been near D.Z., but again later stated he saw D.Z. on the couch of Chilchinbeto NHA house #1. WHITE said he was really drunk and didn't remember a whole lot, but he recalled getting into an altercation with someone named Ramon. Ramon thought WHITE was trying to steal his car and Ramon cut WHITE with a knife. Ramon left in the car and WHITE remained at NHA #1.

12. WHITE went back inside the house and sat down, attempting to bandage the wound. There was an unknown girl there who helped him bandage the wound. D.Z. was at Chilchinbeto NHA house #1 at that point in the back room with the same girl who assisted WHITE bandage his wounds. WHITE left the house and was picked up by on older man while hitchhiking. The man dropped WHITE in Kayenta, where he went straight to hotel room #156 of the Monument Valley Inn

where his grandmother, Linda Bedonie, lives permanently. WHITE told Agents they could confirm his presence at the room with Linda.

14. Following the interview, SA Garcia and SA Burke went to room #156 and interviewed Jolanda White, the aunt of WHITE. Jolanda also lives in room #156 full time with Linda Bedonie. According to Jolanda, WHITE is usually in and out of the room, but he does not stay there permanently.

14. Agents next spoke with Linda at the hotel while she was on shift as a housekeeper for the Monument Valley Inn. Linda told Agents that WHITE came home a couple days prior in the morning to shower. He had a cut on his arm, but he didn't want to talk about it. After his shower, Linda went in the bathroom and picked up bloody towels, which she took out to the dumpster. That was the last time she saw WHITE.

15. Agents searched the dumpster as described by Linda and located the bloody towels wrapped in a plastic bag where Linda had explained throwing them out.

16. Agents asked Linda for consent to go inside the hotel suite where WHITE took his shower. Linda escorted Agents into room #156 where WHITE would stay whenever he came back and pointed out the clothes that WHITE had there. WHITE stayed in a separate bedroom within the hotel suite of #156. After being escorted into WHITE's room by Linda, Agents asked Linda to sign a consent form in order to collect the clothing that she designated as dirty. During this time,

5

Agents saw in plain view a knife within WHITE's room that appeared to have a substance consistent with blood on the handle. The substance appeared to be dried. Agents also observed a substance consistent with dripping blood on the bottom end of the door which leads into WHITE's room. WHITE only stays in the room every once in a while and is usually gone for days at a time in between stays with his family in room #156. He had both clean and dirty clothes in the room. Agents backed out of the room at that point.

17. On March 8, 2023, SA Vargas spoke with an FBI confidential human source (CHS), who has provided reliable and verified information to the FBI on multiple incidents in the past. The CHS has received monetary compensation for information provided in the past. The CHS spoke to Ignacio on the evening of March 7, 2023, after a private search party occurred looking for D.Z. Ignacio stated to the CHS that WHITE had come by her house covered in mud and blood. WHITE was asking Ignacio to clean up. Ignacio asked WHITE what happened, and he stated he beat up D.Z. "bad." WHITE further stated he, "fucked him up bad."

18. Ignacio asked where D.Z. was, and WHITE stated he killed D.Z. WHITE did not realize at that point that Ignacio and D.Z. were related. Ignacio kicked WHITE out of the house. WHITE told Ignacio that if she said anything then she would be "next." Ignacio and the family of D.Z. conducted search parties for D.Z. through March 7th and 8th, with no success. Ignacio stated to the CHS that they keep calling his phone, but it seems to be off.

## Things to Be Searched for and Seized

19.     Your affiant seeks permission to search for things related to the murder of D.Z., including any blood evidence, edged weapons, DNA evidence, or clothing related to the murder. Based on your affiant's training and experience, it is known to your affiant that blood evidence may be transferred and/or deposited during and after an assault and/or murder, particularly when a weapon is used and there is blood evidence and/or blood spatter.  For example, blood may be left on items at or near where the assault/murder occurred and/or it may be transferred or left on the suspect/victim and/or the suspect's/victim's clothing. While sometimes blood evidence is clearly visible, it often requires observation and analysis by forensic technicians in a laboratory setting to detect, analyze, and/or compare.  Such evidence may corroborate the assault and assist in establishing where and how the incident occurred. In this case, your affiant seeks to search for and collect blood evidence, to include blood, dried blood, and/or substances that appear to be blood, which may be on the floors, walls, clothing, bedding, furniture, weapons, or items used to clean up the same (such as cloth towels, washcloths, or paper towels).

20.     Your affiant also knows that indicia of ownership, occupancy, and/or use of a residence is important in a criminal case. Such information may help establish the location of a crime, potential and/or likely suspects, and potential and/or likely witnesses. Based on your affiant's training and experience, indicia of ownership and occupancy includes such things as:  mail (e.g., bills) that may be

7

addressed to the occupant(s); driver's licenses and/or identification cards; personal property such as clothing that may identify the owners and/or occupants of the structure; and photographs of the owners and/or occupants at the structure.

21. The things to be searched for and seized are described further in Attachment B.

## Conclusion

22. Based on the information in this affidavit, your affiant respectfully submits that there is probable cause to believe that evidence described in Attachment B is located in the Subject Premises, as more fully described in Attachment A, which will support an investigation related to suspected violations of 18 U.S.C. §§ 1111, 1153, 113(a)(3), and 113(a)(6) (murder and assault). This affidavit was sworn telephonically before a United States Magistrate Judge legally authorized to administer an oath for this purpose.

**Pursuant to 28 U.S.C. § 1746(2), I declare that the foregoing is true and correct to the best of my knowledge and belief.**

JESSE VARGAS
Digitally signed by JESSE VARGAS
Date: 2023.03.08 20:20:02 -07'00'

_____
Jesse Vargas
Special Agent, FBI

_X_ Sworn by Telephone

Date/Time: _____

March 8, 2023
_____
Date

Camille D Bibles
Digitally signed by Camille D Bibles
Date: 2023.03.08 20:45:51 -07'00'

_____
Camille D. Bibles
United States Magistrate Judge

8